IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| Benjamin Raslavich, individually and on behalf of all others similarly situated, | **CLASS ACTION** <br> **JURY TRIAL DEMANDED** |
| Plaintiff, | |
| v. | Case No: 8:22-cv-02163 |
| Kin Insurance, Inc., and Kin Interinsurance Network, | |
| Defendants, | |

## AMENDED CLASS ACTION COMPLAINT

COMES NOW Plaintiff Benjamin Raslavich ("Plaintiff"), and brings this class action against Defendants Kin Insurance, Inc., ("Kin Insurance") and Kin Interinsurance Network ("Kin Interinsurance") for Defendants' violations of the Florida Telephone Solicitation Act, Fla. Stat. § 501.059, alleging as follows:

## NATURE OF THE ACTION

1. This is a class action under the Florida Telephone Solicitation Act ("FTSA"), Fla. Stat. § 501.059, as amended by Senate Bill No. 1120.[1]

2. Defendants are businesses that sell or issue homeowner's insurance in the

---

[1] The amendment to the FTSA became effective on July 1, 2021.

State of Florida.

3. Kin Insurance is located in Illinois and engages in selling insurance policies to Florida residents.

4. Kin Interinsurance is a citizen of Florida and is located in St. Petersburg, Florida. According to its website, Kin Interinsurance "is a reciprocal insurance exchange organized under the laws of Florida, existing for the benefit of its subscribers" and operates as "an unincorporated association of [its] subscribers."

5. Kin Interinsurance is a "reciprocal insurer" as defined by Florida Statute, § 629.021, because it is "an unincorporated aggregation of subscribers operating individually and collectively through an attorney in fact to provide reciprocal insurance among themselves."

6. Because Kin Interinsurance is a "reciprocal insurer" as defined by Florida Statute, § 629.021, only Florida "[i]ndividuals, partnerships, and corporations" can "make applications for, enter into agreements for, and hold policies or contracts in or with, and be subscribers of" Kin Interinsurance. *See*, Fla. Stats., § 629.191.

7. As an unincorporated association with subscribers located in Florida, Kin Interinsurance is deemed a citizen of Florida. *Rolling Greens MHP, L.P. v.*

*Comcast SCH Holdings L.L.C.,* 374 F.3d 1020, 1021–22 (11th Cir. 2004).[2]

8. To promote their insurance products, the Defendants engaged in telephonic sales calls to consumers without having secured prior express written consent as required by the FTSA.

9. Plaintiff and the Class members have been aggrieved by the Defendants' unlawful conduct, which adversely affected and infringed upon their legal rights not to be subjected to the illegal acts at issue.

10. Through this action, Plaintiff seeks an injunction and statutory damages on behalf of Plaintiff individually and the Class members, as defined below, and any other available legal or equitable remedies resulting from the unlawful actions of Defendants.

## **PARTIES**

11. Plaintiff is, and at all times relevant hereto was, an individual and a "called party" as defined by Fla. Stat. § 501.059(1)(a) in that Plaintiff was the regular user of telephone number ***-***- 4551("Plaintiff's Telephone Number") that received Defendants' telephonic sales calls.

12. Defendants are "doing business in this state" as defined by Fla. Stat. 501.059(1)(e).

---

[2] Kin Insurance removed this case to federal court under the Class Action Fairness Act ("CAFA"). But because Kin Interinsurance and the Plaintiff are both citizens of Florida, complete diversity of citizenship, as required by CAFA, is lacking.

13. Defendants are "persons" as defined by Fla. Stat. § 1.01(3).

14. Kin Interinsurance is a citizen of the State of Florida. *See, e.g., United Services Automobile Assn. v. Cataldo,* 615CV1131ORL22TBS, 2015 WL 12859426, at *2 (M.D. Fla. Sept. 16, 2015)*, report and recommendation adopted,* 615CV1131ORL22TBS, 2015 WL 6701336 (M.D. Fla. Nov. 2, 2015)(ruling that as an unincorporated association, a reciprocal insurance exchange is considered to have the citizenship of its members for diversity purposes in federal court).

## JURISDICTION AND VENUE

15. The matter in controversy exceeds the sum or value of $30,000.00 exclusive of interest, costs, and attorney's fees.

16. Defendants are subject to personal jurisdiction in Florida because this suit arises out of and relates to Defendants' contacts with this state. Defendants made or caused to be made telephonic sales calls into Florida without the requisite prior express written consent in violation of the FTSA. Plaintiff received such calls while residing in and physically present in Hillsborough County, Florida.

17. Venue in this District is proper because Plaintiff resides here, Defendants conduct business here, and the complained of conduct of Defendants occurred here.

## FACTUAL ALLEGATIONS

18. At all times material hereto, Plaintiff was and is a Florida resident and the regular user of Plaintiff's Telephone Number.

19. On or after July 1, 2021, Defendants made, or knowingly allowed to be made, a "telephonic sales call" as defined by Fla. Stat. § 501.059(1)(j) to Plaintiff's Telephone Number. A screenshot of said telephonic sales call/text message is attached hereto as "Exhibit A".

20. As demonstrated by the screenshot, the purpose of Defendants' telephonic sales call/text message was to promote and solicit the sale of their insurance products.

21. More specifically, the text message indicated:

> Kin: Hi Benjamin &amp; anna [high-five emoji]
> Your quote is waiting for you to update it… don't leave it hanging!
> Revisit Kin Insurance to update your Quote now. https://welcome.kin.com/start

*See,* Exhibit A.

22. Upon information and belief, Defendants caused or knowingly allowed similar telephonic sales calls/text messages to be sent to individuals in Florida.

23. The telephonic sales calls/text messages detailed above involved an automated system for the selection or dialing of telephone numbers when a connection is completed, as evidence by the ill-fated attempt to "personalize"

the text message sent to the Plaintiff and his wife Anna, whose name is spelled "anna" in the text, and the inclusion of a disjunctive "&amp" in the text message. If the text message had been transmitted on an individual basis to the Plaintiff and his wife, it's unlikely it would have contained the errors detailed in the prior sentence.

24. The telephonic sales call detailed above was made without Plaintiff's "[p]rior express written consent" as defined by Fla Stat. § 501.059(1)(g) because the Plaintiff never signed a written agreement that:

   - clearly authorized the making or allowing the placement of a telephonic sales call by telephone call, text message, or voicemail transmission to deliver or cause to be delivered to the Plaintiff a telephonic sales call using an automated system for the selection or dialing of telephone numbers, the playing of a recorded message when a connection is completed to a number called, or the transmission of a prerecorded voicemail;
   - Included the telephone number to which the Plaintiff authorized a telephonic sales call to be delivered; and
   - Included a clear and conspicuous disclosure informing the Plaintiff that:
        a. By executing the agreement, the Plaintiff authorized the Defendants to deliver or cause to be delivered a telephonic sales call to the Plaintiff using an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called; and
        b. that the Plaintiff was not required to directly or indirectly sign the written agreement or to agree to enter into such an agreement as a condition of purchasing any property, goods, or services.

25. Both Plaintiff and the telephone to which Plaintiff's Telephone Number was and is assigned were physically located in the State of Florida at the time of

the above detailed telephonic sales call.

26. All conditions precedent to the filing of this action have occurred or been waived.

## CLASS ALLEGATIONS

27. Plaintiff brings this lawsuit as a class action on behalf of Plaintiff individually and on behalf of all other similarly situated persons as a class action pursuant to Florida Rule of Civil Procedure 1.220(b)(2) and (b)(3). The "Class" that Plaintiff seeks to represent is defined as:

> **All persons in the State of Florida who, (1) were sent a telephonic sales call regarding Defendants' goods and/or services, (2) using the same equipment or type of equipment utilized to call Plaintiff, (3) without "prior express consent" as defined by Fla. Stat. § 501.059(1)(g), (4) on or after July 1, 2021.**

28. Defendants and their employees or agents are excluded from the Class. Plaintiff does not know the exact number of members in the Class but believes the Class members number in the several thousands, if not more.

29. Upon information and belief, Defendants have placed telephonic sales calls to telephone numbers belonging to thousands of consumers in Florida without their prior express written consent. The members of the Class, therefore, are believed to be so numerous that joinder of all members is impracticable.

30. The exact number and identities of the Class members are unknown at this

time and can be ascertained only through discovery. Identification of the Class members is a matter capable of ministerial determination from Defendants' records.

31. There are numerous questions of law and fact common to the Class which predominate over any questions affecting only individual members of the Class. Among the questions of law and fact common to the Class are: (1) Whether Defendants initiated telephonic sales calls to Plaintiff and the Class members; (2) Whether Defendants can meet its burden of showing that it had prior express written consent to make such calls; and (3) Whether Defendants are liable for damages, and the amount of such damages.

32. The common questions in this case are capable of having common answers. If Plaintiff's claim that Defendants routinely transmit telephonic sales calls without prior express written consent is accurate, Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

33. Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

34. Plaintiff is a representative who will fully and adequately assert and protect the interests of the Class and has retained competent counsel. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect

the interests of the Class.

35. A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class may be in the millions of dollars, the individual damages incurred by each member of the Class resulting from Defendants' wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

36. The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendants. For example, one court might enjoin Defendants from performing the challenged acts, whereas another may not. Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

### COUNT I
### **VIOLATION OF FLA. STAT. § 501.059**
### (On Behalf of Plaintiff and the Class against Kin Insurance)

37. Plaintiff re-alleges and incorporates the allegations in paragraphs 1 – 26

above, as if fully set forth herein.

38. It is a violation of the FTSA to "make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a).

39. A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(g).

40. "Prior express written consent" means an agreement in writing that:

   1. Bears the signature of the called party;

   2. Clearly authorizes the person making or allowing the placement of a telephonic sales call by telephone call, text message, or voicemail transmission to deliver or cause to be delivered to the called party a telephonic sales call using an automated system for the selection or dialing of telephone numbers, the playing of a recorded message when a connection is completed to a number called, or the transmission of a prerecorded voicemail;

   3. Includes the telephone number to which the signatory authorizes a telephonic sales call to be delivered; and

   4. Includes a clear and conspicuous disclosure informing the called party

that:

    a. By executing the agreement, the called party authorizes the person making or allowing the placement of a telephonic sales call to deliver or cause to be delivered a telephonic sales call to the called party using an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called; and

    b. He or she is not required to directly or indirectly sign the written agreement or to agree to enter into such an agreement as a condition of purchasing any property, goods, or services.

Fla. Stat. § 501.059(1)(g).

41. Kin Insurance failed to secure prior express written consent from Plaintiff and the Class members.

42. In violation of the FTSA, Kin Insurance made and/or knowingly allowed telephonic sales calls to be made to Plaintiff and the Class members without Plaintiff's and the Class members' prior express written consent.

43. Kin Insurance made and/or knowingly allowed the telephonic sales calls to Plaintiff and the Class members to be made utilizing an automated system for the selection or dialing of telephone numbers.

44. Kin Insurance's violation of Fla. Stat. § 501.059(8)(a) was willful or knowing, in that at all times material hereto Kin Insurance knew it was making, or knowingly allowing to be made, a telephonic sales call involving an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number

called to Plaintiff and the Class member without Plaintiff's and the Class member's prior express written consent.

45. As a result of Kin Insurance's conduct, and pursuant to §§ 501.059(10) and (11) of the FTSA, Plaintiff and Class members were aggrieved and are each entitled to recover damages, costs, and attorney's fees from Kin Insurance. Plaintiff and the Class members are also entitled to an injunction against future calls. *Id*.

## COUNT II
## VIOLATION OF FLA. STAT. § 501.059
**(On Behalf of Plaintiff and the Class against Kin Interinsurance)**

46. Plaintiff re-alleges and incorporates the allegations in paragraphs 1 – 26 as if fully set forth herein.

47. It is a violation of the FTSA to "make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a).

48. A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the

direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(g).

49. "Prior express written consent" means an agreement in writing that:

   1. Bears the signature of the called party;

   2. Clearly authorizes the person making or allowing the placement of a telephonic sales call by telephone call, text message, or voicemail transmission to deliver or cause to be delivered to the called party a telephonic sales call using an automated system for the selection or dialing of telephone numbers, the playing of a recorded message when a connection is completed to a number called, or the transmission of a prerecorded voicemail;

   3. Includes the telephone number to which the signatory authorizes a telephonic sales call to be delivered; and

   4. Includes a clear and conspicuous disclosure informing the called party that:

      a. By executing the agreement, the called party authorizes the person making or allowing the placement of a telephonic sales call to deliver or cause to be delivered a telephonic sales call to the called party using an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called; and

      b. He or she is not required to directly or indirectly sign the written agreement or to agree to enter into such an agreement as a condition of purchasing any property, goods, or services.

Fla. Stat. § 501.059(1)(g).

50. Kin Interinsurance failed to secure prior express written consent from Plaintiff and the Class members.

51. In violation of the FTSA, Kin Interinsurance made and/or knowingly allowed telephonic sales calls to be made to Plaintiff and the Class members without Plaintiff's and the Class members' prior express written consent.

52. Kin Interinsurance made and/or knowingly allowed the telephonic sales calls to Plaintiff and the Class members to be made utilizing an automated system for the selection or dialing of telephone numbers.

53. Kin Interinsurance's violation of Fla. Stat. § 501.059(8)(a) was willful or knowing, in that at all times material hereto Kin Interinsurance knew it was making, or knowingly allowing to be made, a telephonic sales call involving an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called to Plaintiff and the Class member without Plaintiff's and the Class member's prior express written consent.

54. As a result of Kin Interinsurance's conduct, and pursuant to §§ 501.059(10) and (11) of the FTSA, Plaintiff and Class members were aggrieved and are each entitled to recover damages, costs, and attorney's fees from Kin Interinsurance. Plaintiff and the Class members are also entitled to an injunction against future calls. *Id*.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff, individually and on behalf of the Class, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Class as defined above, and appointing Plaintiff as the representative of the Class and Plaintiff's counsel as Class Counsel;
b) An award of statutory damages for Plaintiff and each member of the Class;
c) An injunction requiring Kin Insurance and Kin Interinsurance to cease all telephonic sales calls made without express written consent, and to otherwise protect the interests of the Class;
d) An award of court costs;
e) Such further and other relief as the Court deems necessary.

## JURY DEMAND

Plaintiff, individually and on behalf of the Class, hereby demand a trial by jury.

DATED: September 26, 2022

Respectfully Submitted By:

/s/ Dale T. Golden
DALE T. GOLDEN, ESQ.
Florida Bar No.: 94080
GOLDEN SCAZ GAGAIN, PLLC
1135 Marbella Plaza Drive
Tampa, FL 33610
Telephone: (813) 251-5500
Fax: (813) 251 – 3675
dgolden@gsgfirm.com
Counsel for the Plaintiff